THE BOARD OF EDUCATION OF THE CITY OF IOLA, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ALLEN *et al., Appellees*.

No. 16,802.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of an Act.* The statute known as the "Barnes law" is not unconstitutional upon the ground that it violates section 16 of article 2 of the constitution.

2. COUNTY HIGH SCHOOLS—*Duty of County Commissioners to Make Tax Levy.* Where the county superintendent certifies to the board of county commissioners the amount necessary for the maintenance of the high schools in such county for the ensuing year, as prescribed by chapter 333 of the Laws of 1907, it is the duty of that body to make such levy as will produce the amount named, not exceeding the maximum levy fixed by section 15 of chapter 245 of the Laws of 1909.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed June 11, 1910. Reversed.

*A. F. Florence, Travis Morse,* and *G. E. Pees,* for the appellant.

*H. A. Ewing, G. R. Gard,* and *S. A. Gard,* for the appellees.

The opinion of the court was delivered by

GRAVES, J.: The board of education in the city of Iola made application to the district court of Allen county to compel the board of county commissioners to levy a tax of five-tenths of a mill upon the taxable property in that county for the maintenance of high

schools established under what is known as the "Barnes law." An alternative writ was allowed, to which an answer was filed, and upon a trial a peremptory writ was refused and the board of education appeals.

There are seven high schools established in that county; one at each of the following cities: Iola, Humboldt, Gas City, La Harpe, Moran, Savonburg, and Elsmore. The method prescribed by statute for the levying of taxes for the maintenance of these schools is as follows:

Section 5 of chapter 397 of the Laws of 1905 (Gen. Stat. 1909, § 7796) provides that the principal of each high school shall, at the expiration of the school year, make a report under oath to the county superintendent, showing the total enrollment and the daily attendance of each pupil and the average daily attendance in his school for that year, and make such other reports as that officer may require. By section 1 of chapter 333 of the Laws of 1907 (Gen. Stat. 1909, § 7797) it is made the duty of the county superintendent to certify to the county clerk, ·on or before July 25 of each year, the average daily attendance in the several high schools of the county for the year ending June 30 preceding, and to certify to the board of county commissioners the amount necessary for the maintenance of such high schools for the ensuing year, and the county commissioners are required to make such a levy as may be necessary to produce such amount, not exceeding 3 mills on the dollar of the assessed valuation. By section 15 of chapter 245 of the Laws of 1909 (Gen. Stat. 1909, § 9408) the authority of the board of county commissioners is limited to a levy not in excess of five-tenths of a mill upon the dollar. It is provided in section 1 of chapter 333 of the Laws of 1907 (Gen. Stat. 1909, § 7797) that if the board of county commissioners fail to make the levy required by the certificate of the county superintendent that officer shall make a suitable

levy and certify the same to the county clerk, who shall enter it upon the tax roll.

In this case the county superintendent sent the certificate to the board of county commissioners, as prescribed by law. This certificate showed that the sum of $26,000 was necessary to maintain the high schools, and that the assessed valuation of taxable property in the county was $30,875,000. The maximum levy permitted by the statute (five-tenths of a mill) would produce only $15,437.50, leaving a deficit of more than $10,000. It will be seen, therefore, that it was impossible for the board of county commissioners to make a levy sufficient to produce the amount required.

It is provided by section 27 of chapter 245 of the Laws of 1909 (Gen. Stat. 1909, § 9420) that where the officer or board charged with the duty of making a levy under this law is of the opinion that the amount of tax levy which may be made under the limitations of this act will be insufficient the question of an increased levy may be submitted to the voters of the taxing district, who may authorize the amount of the proposed increase, and if three-fourths of the votes cast at the election are in favor of such increase the officers may make the increased levy. The county commissioners, being unable to make a levy sufficient to raise the amount stated in the report of the county superintendent, decided after a full and conscientious examination into the subject that the sum of $9262.50, which amount could be raised by a levy of three-tenths of a mill on the dollar, was amply sufficient to maintain the high schools, and that such amount was all that the county could fairly be compelled to contribute to that fund. In their answer to the alternative writ they show by a computation that this amount, together with what in their opinion would be reasonable for the cities where the schools are located to pay, would be sufficient for the suitable maintenance of the high schools; and they say that from considerations of jus-

tice, and to protect the taxing power from abuse, they made a levy of only three-tenths of a mill on the dollar, believing that this would supply the needs of the schools.

The court, upon final hearing, refused to issue a peremptory writ. The board of county commissioners is doubtless well qualified to deal with this question, but the provisions of the statute seem to indicate a purpose to avoid its services in determining the amount of the tax levy for high-school purposes. We assume that the levy was caused to pass through its hands principally for the purpose of placing it in the ordinary channel of taxation, rather than for the purpose of obtaining the benefit of the judgment or experience of that body.

It is provided by section 5 of chapter 397 of the Laws of 1905 (Gen. Stat. 1909, § 7796) that the data from which the levy must be made shall be sent to the county superintendent of public instruction, and the amount necessary to be raised for high-school purposes is to be determined by that officer. The county commissioners have no voice whatever in determining that question. It is their duty to make such a levy as will produce the required amount as nearly as possible, within the limitations fixed by statute. When, as in this case, it appears that a levy sufficient to raise the desired amount can not be made, the question of an increased levy may be submitted to a vote of the people, as provided in section 27 of chapter 245 of the Laws of 1909 (Gen. Stat. 1909, § 9420). If this is not done, a levy should be made such as will produce the largest amount within the power of the officers whose duty it is to make the levy. Clearly it was the intention of the legislature that a fund should be provided for the support of the high schools, and every officer charged with the duty of enforcing the law in this respect should perform the duty imposed, as far as possible. The duty of estimating the amount necessary to maintain these schools suitably for the current year has been placed

50—82 KAN.

upon the county superintendent of public instruction, and that officer has the exclusive power to perform that duty. The county commissioners have no power in the premises beyond making a levy. In this case five-tenths of a mill is the largest levy which they can make, but a levy to that extent should have been made. (*School District v. Wilson County,* post, p. 806.)

The power of the county commissioners to levy taxes for the support of high schools, as stated in section 1 of chapter 397 of the Laws of 1905, is superseded by the subsequent enactments of 1907 and 1909, which, being the latest expression of the legislature, must control.

We do not concur in the view that chapter 333 of the Laws of 1907 violates section 16 of article 2 of the constitution of the state.

The statute providing for submitting the question of an increased levy to the voters is permissive and not obligatory, and the failure to adopt this method of obtaining a sufficient levy is not a matter of estoppel.

It is stated in argument that the people in the county at large are compelled by this law to pay taxes for the support of high schools remote from their homes and in the management of which they have no voice. This is an inherent inconvenience that can not be avoided. High schools can not be situated within convenient distance of every residence in a large county. Every student in the county, however, is free to attend any high school in that county. This obviates, as far as possible, the criticism suggested, and removes any constitutional objection as to want of uniformity.

We conclude that the district court erred in not issuing the writ requiring the county commissioners to make a levy of five-tenths of a mill upon the dollar of the assessed valuation of the taxable property of the county, and the judgment is therefore reversed.